**Marvin HARRIS, Administrator of the Estate of Rose Levette Harris, Appellee,**

v.

**HOSPITAL OF The UNIVERSITY OF PENNSYLVANIA, Kurt Barnhart, David Hanes, Anderson–Lewis, Maureen Malee, Lee Goldberg.**

**Appeal of Hospital of the University of Pennsylvania, David Hanes, M.D., and Todra Anderson, M.D., Appellant.**

Superior Court of Pennsylvania.

Argued Dec. 1, 1999.
Filed Dec. 29, 1999.

Peter J. Lynch, Cherry Hill, NJ, for appellants.

Brian Hall, Philadelphia, for appellee.

Before CAVANAUGH, DEL SOLE, POPOVICH, JOHNSON, HUDOCK, FORD ELLIOTT, MUSMANNO, ORIE MELVIN, and LALLY–GREEN, JJ.

OPINION PER CURIAM:

¶ 1 This is an appeal from an order granting sanctions pursuant to Philadelphia Civil Rule (Phila.Civ. R.) 229.1. For the reasons set forth below, we reverse.

¶ 2 On November 9, 1995, Appellee Marvin Harris filed a wrongful death and survival action alleging that the negligence of Appellants, the Hospital of the University of Pennsylvania (HUP) and various doctors, resulted in the death of his wife and their child.[1] On May 19, 1998, prior to trial, the parties reached a settlement whereby Appellants agreed to pay Appellee $887,500; the balance of the settlement, $1,737,500, was to be paid by the Medical Professional Liability Catastrophe Loss Fund. On May 20, 1998, the court entered the following order:

> The court having been advised that the within case has been settled, the case shall be marked "discontinued" on the Prothonotary's docket and removed from the applicable list and inventory of pending cases.... Within ninety (90) days of the date hereof, the within case shall be restored to the appropriate trial

---

1. On September 9, 1993, Mrs. Harris, who was 29½ weeks pregnant, was admitted to HUP for a non-stress test. She began having seizures on September 13th and died later that night. Although Appellants delivered her unborn child by cesarean section, the child experienced multiorgan failure and died the next morning.

list upon written certification of counsel that the settlement has not been effectuated.... It is further ordered and decreed that in the following types of cases additional steps must be taken to officially conclude the case: minor's compromises, incompetent/incapacitated person's compromises, wrongful death/survival actions. (See Pa.R.C.P. 2039, 2064, 2206)....

Appellee subsequently executed a Full and Final Release, which was received by Appellants on July 1, 1998. The record does not establish that the trial judge knew the terms of the settlement or approved the gross amount.

¶ 3 On August 13, 1998, Appellee petitioned for court approval of the settlement agreement. The next day, Appellee petitioned for sanctions pursuant to Phila. Civ. R. 229.1 because the settlement proceeds remained unpaid more than 20 days after the release was executed. By Order dated September 18, 1998 and entered September 21, the trial court granted the petition for sanctions. The settlement was subsequently approved by Order dated September 24, 1998,[2] and this timely appeal follows.

¶ 4 Although Appellants list four questions in their brief, fundamentally, they raise two issues for our review: (1) the trial court erred in granting sanctions pursuant to Phila. Civ. R. 229.1 because that rule conflicts with a state rule and statute; and (2) if Rule 229.1 sanctions are appropriate, the trial court erred in failing to make its ruling prospective. We conclude that sanctions pursuant to Rule 229.1 were inappropriate in the present case and reverse.

¶ 5 As titled, Phila. Civ. R. 229.1 provides sanctions for failure to deliver settlement funds:

(D) A Released Party shall have twenty (20) calendar days **from receipt of an executed release** within which to deliver the settlement funds to the Releasing Party or its counsel.

(E) If settlement funds are not delivered to the Releasing Party within the aforesaid twenty (20) day period, the Releasing Party may:

(1) invalidate the settlement; or

(2) file an affidavit with Motion Court attesting to non-payment....

(F) Upon receipt of the attorney affidavit and supporting documentation ... the Released Party shall have twenty (20) days to file a response. If the Court finds that the Released Party has violated this rule and that there is no material dispute as to the terms of the settlement or the terms of the release, the Court **shall impose sanctions** in the form of simple interest ... running from the twenty-first day to the date of delivery of the settlement funds, together with reasonable attorneys' fees incurred in the preparation of the affidavit.

Phila. Civ. R. 229.1(D–F)(emphasis added). Because the settlement funds in the present case were not forwarded to Appellee within the prescribed 20 days, the trial court ordered Appellants to pay simple interest at a rate of 5.375% from July 20, 1998 until the date of delivery of the settlement funds.[3] *See* Order, dated 9/18/98. Balancing the interests of both parties, the trial court reasoned that "[w]hile the settlement continues to accrue interest, Plaintiff alone bears the risk that Defendants or their carrier may become insolvent." (Trial Ct. Op. at 4).

---

**2.** We note that Appellee received the settlement funds on October 7, 1998, only 13 days after the court approved the settlement agreement. (Appellee's Brief at 3). Appellants did not, however, forward the Rule 229.1 interest. (*Id.*).

**3.** Because Appellants received Appellee's Release on July 1, 1998, it appears that the 21st day, for Rule 229.1 purposes, would be July 22nd. However, Appellants did not raise this issue on appeal.

¶ 6 Appellants argue, however, that Rule 229.1 conflicts with Pennsylvania Rule of Civil Procedure 2206 and 20 Pa. C.S.A. § 3323, both of which require court approval of the settlement in the present case. "[L]ocal rules cannot be construed as to be inconsistent with the prevailing state-wide rules." *Feingold v. Southeastern Pennsylvania Transp. Auth.*, 512 Pa. 567, 572, 517 A.2d 1270, 1272 (1986). *See* Pa.R.C.P. 239(b)(1)("Local rules shall not be inconsistent with any general rule of the Supreme Court or any Act of Assembly."). When a state and local rule conflict, Phila. Civ. R. 51(C) provides that the state rule prevails. Therefore, Appellants contend that we should construe Rule 229.1 to require payment of settlement funds within 20 days of *court approval* of the settlement in cases where state law mandates such approval. We agree.[4]

¶ 7 Both parties concede that the settlement in the present case required court approval because (1) the settlement involved the interest of a minor, specifically the decedent's three remaining children,[5] Pa.R.C.P. 2206; and (2) an estate is a party to the lawsuit, 20 Pa.C.S.A. § 3323. Where, as in the present case, "wrongful death and survival actions are settled for a single amount, the amount apportioned to the survival action must be approved by a court having jurisdiction." *Moore v. Gates*, 398 Pa.Super. 211, 580 A.2d 1138, 1141 (1990)(*en banc*), *appeal denied*, 527 Pa. 617, 590 A.2d 758 (1991).

¶ 8 Appellee argues, however, that the Rules simply do not conflict: Phila. Civ. R. 229.1 concerns the delivery of settlement funds, while both Pa.R.C.P. 2206 and 20 Pa.C.S.A. 3323 concern court approval of settlement terms. Although the Rules appear to address different procedures, we find that conflict arises in their application. It is simply unfair to require defendants to deliver settlement proceeds before court approval of a settlement agreement when such approval is mandated by state law. Indeed, that settlement is not binding in a subsequent lawsuit unless and until it has been court approved. *See Schuster v. Reeves*, 403 Pa.Super. 518, 589 A.2d 731, *appeal denied*, 528 Pa. 645, 600 A.2d 196 (1991)(reversing summary judgment for survival action on behalf of decedent's estate, as original settlement for wrongful death and survival claims entered into by decedent's parents was not court approved); *Moore, supra,* (finding wrongful death and survival actions not barred by verbal agreement to settle; settlement agreement did not apportion proceeds between two actions and court did not approve survival settlement).[6]

---

4. Appellants also contend that the trial court erred in granting Rule 229.1 sanctions because a "material dispute" existed between the parties; namely, "[t]he disagreement about whether Phila. Civ. R. 229.1's twenty-day 'clock' began to run upon delivery of the Release or only after judicial approval of the settlement[.]" (Appellants' Brief at 25). Appellants, however, misinterpret the Rule. Under subsection (F), before imposing sanctions, a trial court must conclude "that there is no material dispute as to the terms of the settlement or the terms of the release[.]" Phila. Civ. R. 229.1(F). Here, Appellants' dispute involves the application of the Rule itself, rather than the terms of the settlement agreement or release. Clearly, this is not the type of material dispute contemplated by the Rule.

5. Indeed, under the final court-approved distribution order, the children received 52% of the settlement designated for the wrongful death claim. *See* Order, dated 9/24/98.

6. Appellee relies on *Dengler by Dengler v. Crisman*, 358 Pa.Super. 158, 516 A.2d 1231 (1986) for the proposition that "a settlement agreement reached in a case involving a minor's interest is binding upon the defendant once [the] agreement has been reached." (Appellee's Brief at 6–7). Accordingly, he argues that Appellants "cannot avoid their obligation under Rule 229.1 by claiming that the settlement agreement was voidable, and therefore not binding upon them, until after court approval of plaintiff's Petition to Settle." (*Id.* at 7). Appellee, however, misconstrues *Dengler*. In that case, an insurance company repudiated a settlement agreement involving a minor/plaintiff after the agreement had been reached, but prior to court approval. *Id.* at 1232. The trial court ruled that "the agreement was not voidable by the [insurance company] prior to approval of the settlement by the court." *Id.* On appeal, this Court agreed, concluding that "[t]he agree-

¶ 9 Moreover, under the express terms of both the Release and the discontinuance order in the present case, the settlement was contingent upon Appellee's obtaining court approval. *See* Full and Final Release at ¶ 5, Trial Court Order May 20, 1998. Appellee had complete control over this term of the settlement agreement. Although we note that here the delay in petitioning for court approval appears to have been the result of an agreement to file all subsequent petitions under seal rather than the result of dilatory conduct, by failing to petition for court approval in a timely manner, Appellee guaranteed that the court would impose sanctions under Rule 229.1.

¶ 10 Both Appellee and the trial court contend that Appellants could have satisfied Rule 229.1 if they had deposited the settlement funds into an interest bearing escrow account. However, they misread the Rule. Rule 229.1 requires that a Released Party "**deliver** the settlement funds to the Releasing Party or its counsel" within 20 days from receipt of the executed release. Phila. Civ. R. 229.1(D) (emphasis added). The Rule does not provide for the deposit of the settlement funds into a separate escrow account.

¶ 11 More germane to the present situation is Phila. Civ. R. 2206. Although the Rule mirrors its state counterpart, necessitating court approval of settlements involving the interests of minors, Phila. Civ. R. 2206 also provides a means for the depositing of settlement funds:

> After Court approval of the gross amount of the settlement before approval of the Petition for Distribution, the plaintiffs may sign a release to dis-

charge the settling defendant and may issue an Order to Settle, Discontinue and End to the settling party. If Plaintiff releases and discharges a defendant pursuant to this subsection, defendant's draft or check is to be made payable to all plaintiffs and to counsel for plaintiff(s), to be deposited into a separate insured, interest bearing escrow account pending an order of distribution from the Court. **This subsection is intended to preclude issues regarding distribution from preventing timely and prompt tender of settlement proceeds.**

Phila. Civ. R. 2206(E) (emphasis added). The Rule contemplates that, in most cases, court approval of the gross amount of the settlement will be obtained before a plaintiff executes a release. Thereafter, a defendant is required to deposit the settlement funds into an interest bearing escrow account that protects the settlement until a distribution order is entered.[7] Read in conjunction with Rule 229.1, Rule 2206(E) presumes that a court has approved a settlement in which a minor has an interest before a defendant is required to tender settlement funds. Although we realize that the Philadelphia Civil Rules do not address a settlement involving an estate similar to 20 Pa.C.S.A. § 3323, we find that the same principles apply.

¶ 12 Therefore, balancing the interests of both parties and the requirements of the state rules, we conclude that the trial court erred in granting sanctions pursuant to Phila. Civ. R. 229.1. In cases where court approval of a settlement is required by state law, we find that Rule 229.1 must be read to mandate sanctions only when a defendant fails to deliver set-

---

ment to settle in a minor's action comes into existence prior to the court's approval and it *is only the court's disapproval of the terms of the agreement to settle that would permit a party to be released from its obligations thereunder." Id.* at 1233. In the present case, however, Appellants did not attempt to repudiate *the settlement agreement.* Rather, they acknowledge that they are bound by its terms, but argue that they should not be required to

tender the settlement proceeds until the agreement has been court approved. The issue involved here concerns the delivery of settlement proceeds, not the validity of the underlying agreement.

7. Clearly, this would protect the settlement against the subsequent insolvency of the defendant, which appears to be of primary importance to both Appellee and the trial court.

tlement funds within 20 days of court approval of the settlement or execution of the release, whichever is later.[8]

¶ 13 Order reversed.

---

**8.** Because we have reversed the trial court's order, we need not address Appellants' sec- ond argument.